Good afternoon. We call the matter of Mizuka v. Rice Township Police Department and Officer Anthony Martini. Mr. Gerber? Yes, Your Honor. May it please the Court. Thank you for hearing us today. My name is Christopher Gerber. I represent Officer Anthony Martini in connection with this appeal. First, I would respectfully request the Court for a five-minute period of rebuttal. Granted. Thank you. Again, thank you for hearing us today. We are here on appeal of the lower court decision denying motion for summary judgment filed by Officer Martini, my client. It's pronounced Martini? It is. Yes. In Italian, wouldn't that be Martine? It must be. I'm Irish, Chairman. I don't know. Strike one out of the gate. Ending with an E. Those are Italians from New Jersey. Ending a name like Martini with an E instead of an I just kind of seems almost sacrilegious. I'm from South Jersey. I agree. That may be the only thing I agree with right now. Essentially, there are really two issues. The first is whether the Court has jurisdiction to entertain the appeal that I'm prepared to address with the Court. I have a question for you. Yes. Putting aside the affirmative defense question for a second, if we're just determining whether Martini or Martini's actions are reasonable, how do we do that without wading into a factual inquiry? I would submit that the record has sufficient evidence of undisputed facts for this Court to make that decision as a matter of law. We are here asserting the defense of qualified immunity that this police officer I submit is entitled to under the circumstances. That's a question slightly different, right? If you're getting into a reasonableness consideration, doesn't that require you to grapple with the facts? I understand that you think that there are no genuine issues, but as an initial matter, you've got to grapple with the facts. Definitely. I've been dealing with this for 20 years of qualified immunity, and it's a two-part analysis. First is whether there's been a constitutional violation in the first instance, and if so, was it a violation of clearly established law? We've got both here. This is really the case to deal with this. But Judge Greenway is asking you about facts. There are a set of facts here or some facts here that are agreed upon, are there not? Correct. How about starting with telling us what the agreed-upon facts are? Thank you very much, and that's important. That's one of the reasons we are here. Before counsel was appointed by the court, Mr. Mazuka proceeded pro se. Mr. Mazuka is required to follow the rules of civil procedure and rules of evidence as any other litigant, whether he's pro se or not. After I took his deposition, we filed a statement of material of undisputed facts, which is in the record as Document 21. Those undisputed facts I submit form the record upon which this court may determine as a matter of law that Officer Martini is entitled to qualified immunity. These facts we rely upon, and importantly, in response to my opponent's arguments, we do not rely upon anything from the affidavit of probable cause. We do not rely upon anything outside of what essentially Mr. Mazuka admitted during his deposition. That's why we're here. Otherwise, we're wasting our time arguing over disputed facts. Isn't there an instance where your client admits, I believe in the affidavit, that he countered the assertion by Mazuka with regard to safety, and it was his view that it was safe? And once that is said, anywhere in the record for our consideration, isn't there a disputed issue between what his view is with regard to safety and obviously what Mazuka's view is? That certainly cuts to the heart of the matter in a case like this, where a driver is saying through his subjective perception that he didn't think it was safe. What in the record I submit to the court is there to corroborate his self-serving testimony that the roadway was not safe for him to pull over? About his own perceptions, the photographs he put into the record to at least give a question of fact as to whether or not there was a reasonably safe place to stop or not. As Judge Greenaway, I think, is pointing out to you, is your own client is talking about whether or not there was a safe place to park or stop, or whether or not he engaged in evasive activity to elude the officer's overtures for him to stop. We're back to aren't there disputed facts and how do we have jurisdiction here? And I would say no, that even though there may be some snapshots of that roadway, which by the way was about a mile over a period of two minutes of time when this individual, when the plaintiff refused to stop, those few snapshots that you see in the record I submit is insufficient to negate probable causes as a matter of law. Forget about the photos for a second. Just stick with what the judge just asked you. I mean, this is a standard instance where a disputed fact is created, right? I mean, there's a fact. Is it safe? Is it not safe? This person says yes. This person says no. Shouldn't that be resolved as the district court suggested? No, Your Honor, I would respectfully disagree. That's not enough. The question is whether those facts are material. And the question is whether the record contains material, undisputed facts that would allow the court to make a decision. And if I could. Change the facts here so that in your view it would be material. I've thought about that. If it was going to go over a cliff. I would be hard pressed if the officer began the pursuit at the base of a one-lane bridge, a suspension bridge in the middle of a hurricane, and the driver didn't stop. I acknowledge that we'd be hard pressed to state the probable cause existed. But here, the totality, the question as a matter of law, is whether the totality of facts here that were available to the police officer at the time, even though you've got a disagreement from Mr. Mazuka that the roadway was unsafe. He's going out of his way to speak. But the undisputed facts, he passed residential driveways. He passed at least one intersection of another road that came in. If the court accepts, as it must, Mr. Mazuka's testimony that he drove only 35 miles per hour during this entire pursuit, I would say he's hard pressed to say that this was not, he did not have an area to pull over. We, as the courts have held, we as judges and lawyers are not to sit in the comfort of our courtrooms and our chambers and look back on this. I'm going to interrupt you and I beg your pardon. But you're making a credibility, you want us to make a credibility determination. You want us to say, even though it appears that a fact dispute has been established, you really can't believe Mazuka. He could have done this, he could have done that, or whatever. And that's certainly what we can't do. I acknowledge that. I wouldn't waste the court's time suggesting that he's not incredible. What I would suggest is that those facts that are undisputed, that he admitted through the statement of material facts, and are referred to, by the way, in Judge Schwab's opinion in 28A, Judge Schwab actually in her analysis, and I think this is critical in determining that my client is entitled to qualified immunity, Judge Schwab in her analysis says, applying the principles of qualified immunity, we find, based upon the undisputed facts, and the judge italicizes undisputed, that no officer could have reasonably anticipated that the arrest and imprisonment of Mazuka amounted to an unlawful violation in contravention to the Fourth Amendment. In fact, Mazuka points to no cases establishing that under the undisputed circumstances, Martini's conduct was unlawful beyond debate, and we are aware of no such law in existence. Did Judge Martini, Mariani, forgive me, did he accept that? No, he did not. So that's not been adopted by the article. That is correct. The point I'd like to make, though, Your Honor, when we are asking whether qualified immunity should clothe this police officer in protection and avoid the necessity of a trial, I submit to the court that the fact that we have a veteran magistrate judge making such a conclusion, that we're debating it here today, should give that police officer, well, certainly my colleagues and I are, that the police officer should be entitled to that benefit of the doubt. That part of qualified immunity, Your Honor, as you know, is that all but the plainly incompetent police officers are entitled to the protection. He may have violated his rights, but the question of qualified immunity is whether a police officer, a reasonable police officer, in that police car that night at one in the morning, pursuing this individual who wasn't pulling over, despite lights and sirens, for over a mile. That's not a high-speed chase. It doesn't have to be. And that's one of the things that's true. The statute does not require that. It does not require a high-speed chase. And in fact, Your Honor, what's interesting, too, is that it doesn't require evasive maneuvering. All it requires is that once the driver knows it's a police officer, Mr. Mazzucca admitted that he knew it, willfully doesn't pull over. I'm with you. I find some of these issues very interesting, but at the end of the day, the question is whether this police officer is entitled to qualified immunity. Is the clearly established right that's at issue here whether there was probable cause for an arrest, or is the clearly established right that we have to decide if it exists whether or not an officer making a probable cause determination has to consider an affirmative defense? What is it? I think both are at issue in this case. We argue vehemently that the affirmative defense should not negate probable cause. Because it's not clearly established? It's not clearly established. If that's the case, going back to what Judge Greenway pointed out in your client's affidavit of probable cause, why is it he would make any comments about a fact that's a consequence to the affirmative defense if it's not required to be considered? Understood. But, frankly, Your Honor, we did not rely upon that part of the record. We did not rely upon that statement of the officer. In fact, we- But that's not the point, right? Because the point is it's in the record. Therefore, it's available for our consideration. I submit this. That in cases where there is a challenge to an affidavit of probable cause, where there is a claim, as in this case, and it was rejected by the court, that the officer placed false information- I'm running out of time, unfortunately. That's all right. Where- I think this is case in point- where it is alleged that a police officer fabricates information in the affidavit of probable cause. The court is then oftentimes asked to excise that information from the affidavit of probable cause and then determine whether the balance of the information is sufficient to establish probable cause. And I would submit that that is the analysis here, that that doesn't have to be part- should not be part of the analysis. The analysis at the end of the day is whether the undisputed facts in our material facts that we filed are enough to shield the officer of qualified immunity. So let me ask you this question. Let's assume for the moment- I'm not convinced of this, but let's assume for the moment that there is jurisdiction, right? So we're getting into the substance of it. You talk about the conclusively established, that you've looked at these cases and you think that's the standard, and I appreciate that you want to make new law and that's exciting, but I don't want to really go there unless there's a reason to go there. So how is it that we are going to get to conclusively established as the standard that we should apply? That's the broad one. I don't know that the court has to decide that. It's interesting that the other courts that have been asked to call upon this have never squarely held that the affirmative defense applies in any case. I don't know that the court necessarily has to make that determination. And I'll state why, if I could just have another minute. Well, the court can look squarely at the facts as they have reached us from the district court and make a determination of probable cause bill known on those without addressing the affirmative defense question, right? I agree. And I think in this case you can. The court may do that because when you read the affirmative defense, the factors that are in the affirmative defense- Well, it's a lot easier for the court to do that. Certainly. Because our rulings are not exactly crystal clear. I don't want to suggest any obscurity in any opinion, merely that we haven't squarely held if or if how an affirmative defense factors in to the probable cause determination, right? Yes, Your Honor. I'm with you. How would that work? If we were to hold that an affirmative defense is a part of the equation being considered by an officer on the spot making a PC determination, just how does that play out on the ground? I would submit this. In this particular case, that if the court were to find that the affirmative defense factors into the probable cause analysis, the factors in the statute in 75 P.A.C.S.A. 3733A, I think are fair game. The concern that we have- But it's a multi-factor test. How does a police officer go about applying a multi-factor test when making an arrest or filing a citation of this kind? That's one of our concerns. But what's worse is that when you consider that the affirmative defense has the words of good faith concern by the driver, now you're going to interject the subjective perception of the driver? Now is the officer supposed to interview the driver and say, Oh, you didn't think it was safe. I'm sorry. You can go now. Don't officers do that every day? In fact, here, Martini, in fact, did it, right? Because it was his determination on the spot. Is this reasonable? Is it not reasonable from your perspective? Is this safe or is it not safe? Oh, he could have turned in there. He could have turned in there. He could have turned in there. He went through that analysis, and then at the point that Mazuka stopped, he's like, I'm ready to arrest because this guy, he had made the calculus, and the result of the calculus was he should have stopped a lot sooner. I don't quarrel with Your Honor's analysis of that. However, at the end of the day, I don't think that it creates a genuine issue of material fact that would deprive this court of jurisdiction or the ability to find. No, I get that. I get that. But that doesn't – the question is whether any of that's unreasonable for the officer to have engaged him because we know here he did. Your Honor, I don't think it's unreasonable at all. I think we expect our officers to consider the safety before they file the charge. The concern I have, again, is when you're going to interject this good faith, subjective view of drivers, the whole history, the decades of jurisprudence in the Third Circuit is that probable cause is to be determined based upon the facts and circumstances available to the officer at the time, not the subjective intent or motivations of the criminal defendant slash 1983 plaintiff. That is what we're concerned about. If the court were to go down that road, it's going to open up a slippery slope. Well, but you have conceded that it may not be necessary. Yes, Your Honor, I do concede that. We'll have you back on rebuttal, Mr. Perver. Thank you very much. I appreciate the extra time. Thank you. Mr. McFarlane, do I understand you are going to be introducing the advocate who is appearing before us this time? Yes, Your Honor. Your Honor, to the extent necessary, may it please the Court, my name is Joe McFarlane of Decadelo P. Counsel for Mr. Mazuka. With the Court's permission to argue on behalf of Mr. Mazuka, it will be Daniel Stepanovich, a recent Penn Law graduate admitted pursuant to Local Rule 46.3. Thank you very much. Mr. Stepanovich, it's good to have somebody with an easy to pronounce name. Thank you. Good afternoon, Your Honors, and may it please the Court. My name is Daniel Stepanovich, representing the bully, John Mazuka. Officer Martin's appeal should be dismissed for lack of jurisdiction, or alternatively, the District Court's decision should be affirmed on the merits. Do we have to reach the question of whether consideration of an affirmative defense is clearly established in this case? Do we need to even reach that question? No, Your Honor. We can go directly to the public cause question, which pervades fully on factual disputes, and hence why there is also no jurisdiction. So where are those factual disputes if you identify them specifically for us? So there are three areas of disputes. The first is whether the circumstances, the totality of the circumstances established a violation of the Fling-Eluding statute, especially where Mr. Mazuka gave objective signs that he was trying to comply with the statute. And second, whether there was, in fact, a safe place to pull over, and whether Mr. Mazuka pulled over the first possible safe spot, which in this case was the BMW club. And third, whether a jury could find that Officer Martine acted unreasonably after the stop, which colored his judgment in assessing his probable cause determination and suggesting a more personal or possibly improper motive for the stop in the first place. And so we're relying on more than just the statement of undisputed facts. The entire record supports these three sets of disputes. And importantly, these facts, they go both to the affirmative defenses and the probable cause, but particularly in order to make that probable cause determination, a jury would have to resolve these questions of whether Mr. Mazuka actually violated the statute in the first place and whether there was probable cause to arrest Mr. Mazuka. Suppose there was a high school on this pathway to where Mr. Mazuka stopped and had a parking lot for hundreds, thousands of cars, but Mr. Mazuka was not familiar with the area. There was no lighting, but the officer knew that it was there. Would you have the same argument available to you that the subjective view of Mr. Mazuka would create a genuine dispute of material fact? It's not just relying on the subjective view. It's actually looking at the statute itself and what were the conditions on that road and particularly if it's dark. And in the case of this road where there's many curves and turns in it, that would have been reasonable for Mr. Mazuka to have seen that parking lot. And in that case, then there would not have been probable cause. But if it was a large parking lot that a reasonable driver maybe could have pulled into, then possibly that would be a way to do nothing. So what about your adversary's argument that between the point that Officer Martini made himself or made Mr. Mazuka aware of him with the lights and the place where Mr. Mazuka stopped, there were residential areas, there were driveways, et cetera, should that be part of our calculus in determining whether it was reasonable? One of the important parts was Mr. Mazuka's intent to comply with the statute, which was his turning on his four-way hazards, his dome line. And thus it was inobjective indecent to show that he was attempting to comply with pulling over. But because there was no safe spot to pull over, he couldn't do so until there was, as the statute permits, the first line of spot, which was the VFW club. I would just stay with Judge Greenaway's hypothetical for a second. Let's assume we have two different individuals and one individual is familiar with the area, one individual is not familiar with the area, and we have the high school between the point of departure from the workplace until the actual stop in this instance. The officer observes exactly the same conduct, the flashing lights and the dome light, but one person knows there's a high school there but passes right by it. The other person doesn't. Would the officer's situation be different if he arrested both of these individuals? Do you follow what I'm saying? Yes. How would we have a predictable rule for that officer, who obviously doesn't know whether the individual in the car is familiar with the placement of the high school or not? So how would we have a predictable rule here? So we don't need to rely on this. A rule should not rely on the subjective state. Objectively, what are the conditions on the road at that point? And at least particularly in this case, it's also relying, well, what's a jury going to believe when they're confronted with these facts? Are they going to believe Officer Martin's contentions? Are they going to believe Mr. Mazuka's contentions, that it was unsafe? And then they can go through the facts. They can go through the guardrails or whatever actual conditions that are there at present and make a determination whether that was reasonable for Officer Martin to pull over Mr. Mazuka and charge him with fling and looting. So, okay, we'll go back to the same hypothetical, except this time there are lights everywhere at the high school, and you're not familiar with the area. You don't stop. Is there a genuine dispute at the point of final confrontation? Because with those facts, Officer Martini says, hey, there's a high school with a 4,000-car lot. He passed it right by. And Mr. Mazuka says, no, I saw the high school. I didn't think I could pull in there or there was a chain up or whatever he says. But would that create a genuine dispute that should go to trial, or couldn't the district court have looked at that and said, no, genuine dispute's not created here? I'm trying to figure out, as you can see, where can we draw the line, where can we not? When is a genuine dispute created and when is it not? Well, I think on that point, the statute actually is quite clear. It says there's defense if it stopped at the first light spot. And so if Mr. Mazuka ignored the first lighted spot, then that would possibly be a reason there. There would not be a dispute that it was unsafe because he ignored that first lighted opportunity. So from your point of view, it would be judged based upon what's objectively knowable by anyone who passed by the road, whether it's someone familiar with it or not. If everybody who passed on that road would see a lighted spot, that may be duty-bound under the statute to stop at that point. That would be a reason, yes, reasonable. Is it your alternative position, and my understanding from your brief in the issues raised is that alternatively, you have suggested it is appropriate or would have been appropriate for Officer Martini to consider the existence of an affirmative defense here as set forth in the statute? That is correct. How does that work for a police officer in this specific situation by which I mean how does the officer's evaluative process of all the facts and circumstances confronting him actually conduct that mental process? Well, first he's going to look to the statute, and here the statute specifically lays out what sort of factors that he should be considering. You mean in the affirmative defense section? In the affirmative defense when he knows the same section of the offense. Well, yes, but an affirmative defense is exactly that, isn't it? When does an affirmative defense come up in a proceeding? Doesn't it require a proceeding to be raised? I'm sorry, I don't follow on the proceeding that... An affirmative defense must be raised. Isn't that correct? Isn't that a basic principle of law and adversarial in trial practice? In other words, you'd need a proceeding here before an affirmative defense ever actually sprung into the equation. Well, here it is going to what is the totality of the circumstances and... I'm wondering if by saying that what you're suggesting is that it's not the formality of the affirmative defense, which formally cannot be raised until you have a proceeding, but rather the facts and circumstances that would be available to Mr. Mazuka to raise an affirmative defense. Those facts and circumstances supportive of the affirmative defense are what Officer Martini ought to consider in his probable cause determination. Is that what you're suggesting? Yes, and it would be consistent with previous holdings of this court. At least with SANS on that looking into the... Sorry, not SANS, into RADIC. RADIC, yes. That when it's in the statute and an affirmative defense is laid out, it could be relevant to the... SANS is a tougher case. Yes. It's a statute of limitations. Yes. And so, particularly on the affirmative defense question, it comes down to exactly right here in the statute that it is, if it's in the same section as the offensive, it would be reasonable for an officer to consider, because he should know of all the circumstances that it would include the... What we should apply is that we should say that, or we should hold, I should say, rather than the affirmative defense has to be conclusively established. What's your view on that? My opponent tries to argue that there must be a case exactly on point, and that's not consistent with the Supreme Court's decision. It does not need to be an exact case exactly on point for it to be conclusively established. Such a conclusion would, in fact, potentially eliminate 1983 claims, since the law would never be clearly established, and so, therefore, a plaintiff can never establish this case. And so, therefore, what's important is not whether it's conclusively established, but is it within the knowledge of the... Would the officer have noticed that what he was doing is a constitutional violation? And is it your position that in this circumstance, because the way the statute is written, the officer knows the statute that he claims has been violated, which would encompass the set forth so-called affirmative defenses, and that if that officer knows his statute and has the facts that would give rise, I think levering off of what Judge Smith was asking, to the availability of the affirmative defense, he needs to consider or she needs to consider all of those things as part of the probable cause determination. Exactly, Your Honor. And it's right that you say supports that view. Yes. And then further showing that this is at least understood within the circuits of the district courts when they've also addressed the issue, they've also recognized what was held in red. So does it really matter that it's an affirmative defense, or is what matters the facts and circumstances that exist at the time, which may be supportive of an affirmative defense, but may not succeed in proving it, or may support an affirmative defense and may actually carry the day? Is it the facts and circumstances that matter in terms of the PC determination, or is it that there is available under the statute, available an affirmative defense? Well, that's why you could completely avoid the affirmative defense question. It really is. What is the totality of the circumstances? Well, I understand, but that kind of elides the two, really. I agree with your point that we don't have to reach the issue of the affirmative defense if we find that there are disputed facts here for purposes of PC. But that doesn't answer the question when posed as an alternative,  Well, what does this affirmative defense say? It's a multi-part test, right, first of all. It also, unlike some or many or even perhaps most affirmative defenses, places upon the person charged, the defendant, with the initial burden, and not only going forward, but a burden of proof, preponderance of the evidence, doesn't it? Correct. Now, prosecution is still going to have to overcome that because there may be an internal inconsistency within the statute, but we'll set that aside. This is an elaborate mechanism here that we can discuss in terms of how it plays out in process, that is, in a hearing or trial. But it's not as easily made part of an arresting officer's calculus when determining probable cause, is it? I see my time's expired.  One thing, just pulling off of one case out of circuit, and that is just sort of how, since this case has come up only on three circumstances here in the Third Circuit, we look at State v. Dietrich. What was important there was what facts and circumstances were within the officer's knowledge. In that case involved a concealed weapons charge, and the fact that the officers there knew that there was – One officer knew and the other officer didn't know. Weren't they the facts of that case? I mean, my recollection is that one was not afforded qualified immunity, the other was. Well, yes, the one officer who – Who knew? Yes, who knew? He knew they had the concealed weapons permit, and therefore, because he knew that, therefore, he violated the original qualified immunity. Thank you very much. Thank you, Your Honor. Trevor, you have a rebuttal? Don't make promises you can't keep. He's really tough that way. I'm a pussycat, but he's really tough. I appreciate it. This is an important one, and I thank you very much. When I heard Judge Schwartz ask how do we have a predictable rule here, I think what we all need to understand is the well-settled law that probable cause is to be determined based upon the police officer's reasonableness. What is reasonable? Let me read this. Malley v. Briggs, a police officer may be liable for civil damages for an arrest if no reasonable, competent officer would conclude that probable cause exists. So in all those hypotheticals, whether there's a high school, lights, parking lots or not, the determination as to whether probable cause exists as a matter of law and whether the officer's entitled to qualified immunity is based upon what is available to the officer. Yes, but I think the point of contention in the analysis is when the officer, as part of his calculus, is taking into account safety, as is the driver, and there's a difference in the point of view, that creates a dispute. And how do you get around that? The court should answer that, frankly. I think that the driver litigant will always dispute it. But I would submit that the court in this case has more than sufficient evidence in the record. The undisputed facts are there to say that not just Officer Martini, but a reasonable officer in that patrol car that night, based upon what he saw and observed, is sufficient to charge. This is the peril, I submit, I'll go further, I wasn't necessarily going to say this, but this is the peril of interjecting criminal affirmative defenses into a 1983 analysis as to whether probable cause exists. I think, Judge Smith, I think you hit it on the head. When you asked my colleague what is the process, the process in a criminal matter is the Commonwealth has to establish a prime and facie case to get to trial, and then they assert an affirmative defense at trial. It doesn't fit here. The question here is whether or if they assert an affirmative defense. It's rare, I admit, but not completely out of the realm of possibility, that someone chooses not to assert an affirmative defense. Maybe there are tactical reasons for that. Certainly. Maybe someone actually pleads guilty to the traffic offense, which is effectively what this is. This charge is based on a section of the Pennsylvania Motor Vehicle Code. So that's why I'm trying to figure out whether it is an affirmative defense, qua affirmative defense, that we should be requiring a police officer to take into account for probable cause purposes, or whether it is facts and circumstances. The phrase used so frequently, used frequently in the Ravitch opinion. Facts and circumstances which do give rise or could give rise to the invocation of that affirmative defense. I think it's the latter. Which leaves us, if the latter, simply with a run-of-the-mill application of probable cause. That would be our position. I think it's simpler than what my colleague is stating, that you need to have this affirmative defense, and by virtue, and I didn't hear from my colleague the explanation of what that affirmative defense means. The way I read that is that the good faith perception of the driver is going to factor in. That is dangerous. If we adopt that rule. Why is it dangerous if the court, I'm talking in the first instance, the district court or the magistrate, if he or she is appointed to do so, why is that unreasonable for them to make that determination? They make those kinds of determinations every day. It's going to create uncertainty in the law. When we train police officers on what probable cause is, and the threshold that they need to file a criminal complaint is now going to create uncertainty in the law that now they must factor in the subjective views of the criminal defendant that he just arrested at 1 in the morning? What is the uncertainty? Let's start with the case in front of us. What is the possible uncertainty that would arise from 3733? We already know that he took into account safety. And that that is inherent in the statute. I'll tell you where I'm going with that. Because I heard my colleague say, after the stop, I submit to this court, anything that happened after the stop shouldn't factor in as to what Mr. Mazuka is saying. We're not focused on after the stop. Well, that's where the good faith, that's where I read the good faith concern in the statute itself. I think your adversary was using the conduct that post the stop to show the absence of good faith on the part of Mr. Martini. But I think the point that we're trying to get from you is, in this circumstance, the probable cause affidavit included an assessment about whether there was a reasonable place to stop. Therefore, this particular officer didn't find that to be so daunting that it could not be done, or so complicated, or so unpredictable. So how do we get around Mr. Martini's own behavior here in evaluating whether it's permissible, as Judge Smith was suggesting, that we consider all facts and circumstances, including those that may support an affirmative defense? I would have to revert back to what Judge Smith said. I think that it just so happens that the factors identified in the affirmative defense happen to be the factors that the court should consider as to whether probable cause exists in the first place. We have no quarrel with that. Again, I'd be hard pressed if the circumstances presented some horrible danger to the driver and that he was charged with this fleeing and eluding, I wouldn't be here. That's not here. The record is clear. This individual didn't stop when he was told to stop. He passed by residential driveways, an intersecting roadway. And for him to say that it wasn't safe is insufficient to pierce the protections of qualified immunity. That is why we're here. And I thank you very much for the additional time. Thank you, Mr. Gerber. And the record will reflect that Judge Greenaway was partly culpable for the fact that you were not briefed and within your father's time. Wow. Wow. Thank you. Thank you so much for the description. Thank you very much to the advocates. We thank you for your helpful and vigorous arguments. And the panel will take the case under advisement.